## Commonwealth v. Gross

*B. I. Shovlin*, for Commonwealth.

*Schnader, Harrison, Segal & Lewis*, for appellant.

BROWN, P. J., July 24, 1956.—This is an appeal from the indefinite suspension of motor vehicle operating privileges by the Secretary of Revenue of the Commonwealth of Pennsylvania on the ground that appellant, Francis Gross, was an incompetent operator.

Apparently the action of the Secretary of Revenue was based on the provisions of section 615(a) and (b), as amended, of The Vehicle Code of May 1, 1929, P. L. 905, as amended, which provide that he may suspend the operating privilege or license of a person, whenever he "finds upon sufficient evidence: 1. That

such person is incompetent to operate a motor vehicle or tractor, or is afflicted with mental or physical infirmities or disabilities rendering it unsafe for such person to operate a motor vehicle or tractor upon the highways. . . . [or] 5. That such person is incompetent or unable to exercise reasonable and ordinary control over a vehicle": 75 PS §192(*a*)1 and §192 (*b*)5.

However, on an appeal to the court of common pleas, " 'it is the duty of the court to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, *to determine anew whether the operator's license should be suspended*'. . . . 'At such hearing neither the action of the Secretary nor the testimony taken before his representative is properly part of the record of the case' ": Handwerk Automobile License Case, 348 Pa. 263, 264-65.

Such "an appeal to the court is not for the purpose of reviewing the evidence taken before the secretary, and his action thereon, but to hear evidence and determine, in the exercise of the court's sound discretion and in the furtherance of justice, whether the license should be suspended": Commonwealth v. Cole, 350 Pa. 369, 371-72.

"After the appeal has been heard *de novo*, it is the duty of the hearing judge to make findings of fact from the testimony whereon he may reasonably base his ultimate conclusion as to whether the suspension of the operator's license was warranted": Commonwealth v. Strobel, 375 Pa. 292, 294.

Accordingly, the present appeal was heard de novo, and evidence was presented on behalf of both the Commonwealth and appellant, the licensee.

From the testimony adduced at the hearing before the court, the facts are found to be as follows:

## Findings of Fact

1. Appellant has owned and operated a motor vehicle in Pennsylvania for 35 years.

2. Appellant has been licensed to operate a motor vehicle in Pennsylvania from the time Pennsylvania first issued licenses to operators of motor vehicles.

3. Appellant, who had only four years of formal education, is 69 years old and for many years has been a self-employed landscape gardener.

4. Appellant operates a motor vehicle in the course of his business and has no one else to operate a vehicle for him.

5. Appellant has operated a motor vehicle in the course of his business and for pleasure on an average of 35,000 miles per year.

6. Appellant has taught his wife and other licensed operators how to operate motor vehicles.

7. Appellant has never been arrested for or convicted of any crime arising from his operation of a motor vehicle.

8. Prior to June 5, 1955, appellant was involved in only one reportable accident, and that accident was minor in nature.

9. On June 5, 1955, while operating a motor vehicle in the City of Philadelphia, appellant was involved in a collision with another motor vehicle at the intersection of two streets. At that time appellant was traveling on a through street and the other driver was traveling on a stop street.

10. Appellant and the driver of the other automobile were both injured in the accident on June 5, 1955; they were both insured against liability arising from the said accident, and both have entered claims for their injuries against the other's insurer.

11. The Department of Revenue of Pennsylvania conducted a hearing with respect to the accident on

June 5, 1955, and both operators were permitted to keep their respective operator's licenses.

12. Subsequently appellant was required to submit to a special examination to determine his competence to operate a motor vehicle. He was examined late in the afternoon of Thursday, January 5, 1956, and again on Saturday morning, January 7, 1956. This examination was more difficult and more extensive than the one which is given to new applicants for an operator's license.

13. Appellant was subjected to a series of clinical psycho-physical tests and two five-mile road tests in traffic.

14. Although the psycho-physical tests indicated that appellant's reflexes were slightly below normal, this is to be expected in a man of his age. His scores were affected by nervousness and by his unfamiliarity with the testing machines.

15. Appellant's ability to operate an automobile in heavy traffic was tested on two occasions. During the first road test, he momentarily and to a slight degree exceeded the posted speed limit, but his doing so was innocent, trivial in nature, and probably attributable in part to his desire to please the examining policeman who was anxious to quit his duties for the day. While the two examining policemen felt that appellant erred in operating his car in the inner rather than the outer lane of traffic on City Line Avenue, in the manner in which he executed left turns in the face of approaching traffic on City Line Avenue and in traveling beyond the center of a residential street while passing a row of automobiles parked on one side of the street, his conduct on these occasions was reasonable and proper under the circumstances, and in compliance with the provisions of the law.

16. Although the examining officers reported that appellant's performance on these road tests was not

satisfactory, they both erred in their judgment, for appellant's operation of his automobile under their instructions was prudent, and did not disclose nor demonstrate any lack of ability to operate a motor vehicle carefully and in accordance with the requirements of the law.

17. Appellant operated his motor vehicle to and from his tests in a careful and competent manner while accompanied by a retired police officer.

18. Appellant has operated a motor vehicle, before and since taking the special operator's examination, in a careful and competent manner.

19. Appellant is qualified to operate a motor vehicle.

It is a matter of common knowledge that every operator of a motor vehicle develops a rhythm special to himself in the manner of his driving, and when that is broken by instructions from another occupant as to what he should or should not do, naturally he becomes nervous and does not function so well as he does normally when his actions are not sought to be controlled by others. This is the basis for the condemnation of what is generally described as backseat driving. In this instance, although such driving was done by policemen in testing appellant's ability to operate an automobile in traffic, there is no doubt that their instructions were disturbing to one who has been operating automobiles carefully for 35 years. Indeed, the wisdom of some of their directions was questionable, and this no doubt caused misunderstanding on his part. Their criticisms of his operation of his automobile were such as to indicate a questionable application of the relevant principles of law. It is also apparent that some of the difficulty experienced by appellant stemmed from his inability to quickly master the machines by means of which he was also tested.

Appellant has had but four years of formal schooling. "Many a person with far better formal education

than this appellant . . . has shown much less capacity for care and caution than characterizes some [thirty-five] years of an unbroken course of conduct as operator of motor vehicles" in a careful and prudent manner: Commonwealth v. Marsili, 373 Pa. 416, 418.

In view of the uncontradicted evidence of such a long period of time during which appellant drove an automobile without any serious mishap, a few minor errors in matters of judgment if, indeed, there were any, under the directions of the policemen, do not justify the conclusion that he is not competent to operate an automobile. Indeed, the court "ought not to rely on testimony [of the policemen] that is no more than opinion evidence. The proof of the pudding is in the eating": Id., page 418. Surely, it is more important that the Commonwealth have careful operators of motor vehicles upon its streets and highways than it is to have drivers who are proficient in taking tests and passing examinations but who are lacking in the ability to actually operate automobiles carefully at other times.

Based upon all the evidence taken at the hearing before the court, the suspension of appellant's license is not justified. Accordingly, it is determined, in the exercise of sound discretion and in the furtherance of justice, that appellant's license should not be suspended.

### Conclusion of Law

Appellant is entitled to the privilege or license to operate motor vehicles.

### Order

And now, July 24, 1956, the appeal is sustained, the order of the Secretary of Revenue suspending the operating privileges or license of appellant, Francis Gross, is revoked and his privilege or license to operate motor vehicles is reinstated.